[No. 2648. Decided October 22, 1897.]

THE STATE OF WASHINGTON, *Respondent,* v. A. F.
WILLIAMS, *Appellant.*

CRIMINAL LAW — CONSTITUTIONAL GUARANTEES — FAIR TRIAL — COM-
PELLING ACCUSED AND WITNESSES TO APPEAR IN MANACLES — RIGHT
TO CONTINUANCE TO PROCURE WITNESSES — EXCUSABLE DELAY IN
FILING BRIEFS.

Failure of appellant in a criminal case to file his brief within
the required time is excusable, when the counsel who appeared
for him had removed from the state, and appellant, who was con-
fined in jail, procured the brief to be filed as soon as he learned
of the omission.

Under art. 1, § 22 of the constitution, guaranteeing to per-
sons prosecuted for crime the right to have compulsory process
to compel the attendance of witnesses in their behalf, it is error
for the court to refuse to grant a continuance to procure the
presence in person of a material witness for defendant, when
proper application has been made therefor.

Under art. 1, § 22 of the constitution, declaring that, " in
criminal prosecutions the accused shall have the right to appear
and defend in person," and under the common law of England,
adopted into our code so far as applicable, it is error to keep the
accused in manacles during the progress of the trial and in the
presence of the jury, unless it plainly appears that the prisoner
is such a dangerous character as to warrant such precaution.

It is error, likewise, to require a witness for accused to ap-
pear in court fettered and manacled to another person, although
he had been charged with the crime jointly with the accused
and had been found guilty upon a prior and separate trial.

Appeal from Superior Court, Whitman County.—
Hon. WILLIAM McDONALD, Judge. Reversed.

*John F. Dillon,* for appellant.

*John W. Mathews,* for The State.

The opinion of the court was delivered by

REAVIS, J.—Appellant was convicted, in the superior court of Whitman county, of the crime of burglary. The prosecuting attorney appears on behalf of the state and moves to dismiss the appeal because appellant's brief was not filed in due time. It appears that the time within which appellant's brief ought to have been filed expired on the second day of June, 1897, and that the brief was not filed until the 23d day of the same month. But the counsel who appeared for the defendant at the trial had removed from the state before the brief was filed. The defendant was at the time confined in jail, and so soon as he learned that the brief was not filed within the proper time, procured it to be filed. The question not being one of the jurisdiction of the appeal, the appellant's excuse for failure to file his brief within the proper time is deemed sufficient, and the motion to dismiss denied.

The first error assigned by appellant is the refusal of the court to grant a continuance on appellant's application because of the absence of a material witness for appellant. The affidavit, while rather general in its statement of the facts, seems to be sufficient to have entitled appellant to further time. But as this question is not likely to arise upon a new trial, it is not necessary to further notice this objection than to observe that sec. 22, art. 1 of the state constitution, guarantees to persons prosecuted for crime the right to have compulsory process to compel the attendance of witnesses in their behalf, and under this constitutional guaranty the accused has the right to compulsory process to procure the physical attendance of the witness at the trial.

It appears that during the trial the defendant was brought into court and kept there in manacles until, upon protest of defendant's counsel, the manacles were finally re-

moved, but after a considerable period of time had elapsed. And further, that during the progress of the trial and when it was very dark out of doors, at the state's request, a view of the premises, which were alleged to have been entered burglariously by the defendant, was ordered by the court, and that, in the presence of the jury, manacles were placed upon the defendant, and he was ordered by the court to go with the jury to the place of the alleged burglary, and while so manacled he went with the jury a distance of three or four blocks from the courthouse and returned to the court, when the trial proceeded and defendant was permitted to remain manacled until, at his request, the court ordered the manacles removed. It also further appears from the record that one Bates and one Helen, who were jointly charged with the same crime as the defendant, had been theretofore tried in the court and found guilty; that at defendant's request Bates was called to testify as a witness for defendant, and when Bates was brought into the courtroom to testify, and at the request of the prosecuting attorney, Helen was brought into court to remain in the presence of the jury during the time that Bates was testifying; that after Bates had given his testimony, he and Helen were manacled together in the presence of the court and jury, and that defendant protested against Bates and Helen being allowed to remain in the courtroom in the presence of the jury manacled, and requested the court to order the manacles removed. The court refused the request.

It was the ancient rule at common law that a prisoner brought into the presence of the court for trial, upon a plea of not guilty to an indictment, was entitled to appear free of all manner of shackles or bonds, and, prior to 1722, when a prisoner was arraigned or appeared at the bar of the court to plead, he was presented without manacles or bonds, unless there was evident danger of his escape. 2 Hale's Pleas

of the Crown, 219; 4 Blackstone Commentaries, 322; *Layer's Case*, 6 State Trials (4th ed. by Hargrave), 230, 231, 244, 245; *Waite's Case*, 1 Leach's Cases in Crown Law, 36.

In J. Kelyng's Reports, Pleas of the Crown, adjudged in the reign of Charles II, "it was resolved that when prisoners come to the bar to be tried, their irons ought to be taken off, in that they be not in any torture while they make their defense, be their crime never so great. And accordingly upon the arraignment and trial of Hewler and others, who were brought in irons, the court commanded their irons to be taken off." The common law of England was expressly adopted by legislative enactment at the first session of the legislative assembly of this territory, and there is no doubt that the ancient right of one accused of crime under an indictment or information to appear in court unfettered, is still preserved in all its original vigor in this state.

In *State v. Kring*, 64.Mo. 591, the prisoner was convicted of murder in the first degree. The plea of insanity was before the court, and the defendant had some three months before assaulted a person in open court. He was brought into the trial court manacled, and remained some time in that condition. The supreme court, in reversing the judgment of conviction, observed:

"We have no doubt of the power of the criminal court, at the commencement, or during the progress of a trial, to make such orders as may be necessary to secure a quiet and safe one, but the facts stated by the court in this case, as shown by the record, that the prisoner had assaulted a person in court, about three months before the term at which he was tried, would hardly authorize the court to assume that, on his trial for life, he would be guilty of similar outrages. There must be some reason, based on the conduct of the prisoner, at the time of the trial, to authorize so important a right to be forfeited. When the court allows a

STATE v. WILLIAMS. **51**

prisoner to be brought before a jury with his hands chained in irons, and refuses, on his application, or that of his counsel, to order their removal, the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers. Besides, the condition of the prisoner in shackles may, to some extent, deprive him of the free and calm use of all his faculties."

Section 22, art. 1, of our constitution, declares that, "In criminal prosecutions the accused shall have the right to appear and defend in person." The right here declared is to appear with the use of not only his mental but his physical faculties unfettered, and unless some impelling necessity demands the restraint of a prisoner to secure the safety of others and his own custody, the binding of the prisoner in irons is a plain violation of the constitutional guaranty. When the witness Bates was manacled to Helen and kept in court in the presence of the jury against the protest of defendant, defendant's right to a fair trial was impaired. It can hardly be conceived that there was any necessity for this incident to the trial; none appears in the record. 1 Bishop, Criminal Procedure, § 955; Wharton, Criminal Pleading and Practice, § 540; *People v. Harrington*, 42 Cal. 165 (10 Am. Rep. 296); *State v. Smith*, 11 Ore. 205 (8 Pac. 343).

The case is reversed.

SCOTT, C. J., and DUNBAR, ANDERS and GORDON, JJ., concur.