# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>COLLEEN MARILYN KALAMA,<br><br>Appellant. | No.  52964-5-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Colleen Marilyn Kalama pleaded guilty to fourth degree assault.  At sentencing, the trial court imposed legal financial obligations (LFOs).  Kalama appeals the imposition of the LFOs, specifically the $200 criminal filing fee, interest accrual, and community supervision fee.  We affirm the imposition of the $200 criminal filing fee, but remand to the trial court to strike the community supervision fee and the nonrestitution interest accrual provision.

## FACTS

Kalama pleaded guilty to fourth degree assault.  Although the court appointed counsel for Kalama, neither the trial court's order of indigency nor any documentation regarding that decision are in the record on appeal.[1]

At the sentencing hearing, Kalama's attorney argued that Kalama was "currently indigent," and had been unable to find a steady job while the criminal case was pending.  Verbatim Report of Proceedings (VRP) at 8.  Kalama did not address the court regarding her

---

[1] Apart from records showing Kalama posted $30,000 in bail to remain out of custody while her case was pending, there are no documents regarding Kalama's financial situation in the record.

financial situation. Regarding LFOs, the trial court stated, "I find that you may have some ability to pay but you need to focus on things such as anger management . . ." and stated that it intended to impose the "mandatory minimums." VRP at 10. When discussing the judgment and sentence form with Kalama's counsel, the trial court, referring to RCW 10.101.010(3), stated:

> [COURT]: I'm making a finding that she's indigent in the sense that on here. I'm not making a finding that she's indigent up here. I don't find any of the three things that are listed up there.
>
> However by finding that she's currently indigent she doesn't have the ability to pay but she might have the ability in the future. So I took that into account.
>
> [KALAMA]: —right. I think that the statute changed recently that it struck the part indicating the future ability to pay for us no longer is a consideration for the court—
>
> [COURT]: Counsel I can only go by the—the file—everybody keeps saying they may have different forms. This form has three ways you can be indigent under 10[.]101.010(3)(a)[-](c)—I don't find that she's indigent under any of those three things. So I have no reason to check that box.
>
> [KALAMA]: But the forms may be old. I—
>
> [COURT]: Actually it's brand new. September of 2018. So I don't find she's indigent in any one of those three things. But I took her financial resources into account and determined that she'd only pay mandatory minimum so—we'll just have to live with that finding.

VRP at 11-12. Defense counsel later argued that, under 10.101.010(3)(d), a defendant must also be considered indigent if that defendant is unable to pay for the costs of their attorney. The State was not prepared to address that argument, and the trial court continued the issue of LFOs to a later date.

At the hearing on LFOs, Kalama's trial counsel argued that Kalama was found indigent by the trial court at first appearance, and received appointed counsel. Kalama's counsel further

argued that Kalama's circumstances have not changed since that time because she was still unable to find work and she was "staying at friends' houses," and "currently indigent." VRP at 15. After Kalama's counsel made the above statements, the trial court asked Kalama if there was anything that she wanted to say. Kalama declined to address the court.

The trial court then reiterated its finding that Kalama was not indigent as defined in 10.101.010(3)(a)-(c), but that it "took her financial resources and the nature of the burden into effect and only imposed the mandatory minimum sentence." VRP at 16.

The trial court made the following written finding of fact regarding Kalama's ability to pay LFOs:

> The defendant is not "indigent" as defined in RCW 10.101.010(3)(a)-(c) and therefore the court has considered the defendant's financial resources, and the nature of the burden that payment of costs will impose in determining the amount and method of payment for costs imposed by this judgment.

Clerk's Papers at 69. The trial court then imposed a $500 crime victim assessment, $200 criminal filing fee, an interest accrual provision, and a monthly community supervision fee. The trial court later found Kalama indigent for purposes of appeal.

## ANALYSIS

### I. THE $200 CRIMINAL FILING FEE

Kalama argues that the trial court erred when it imposed a $200 criminal filing fee. We disagree.

RCW 10.101.010(3) defines four categories of "indigent." Subsection (a) describes persons who receive certain types of public assistance. Subsection (b) defines indigent as a person who is involuntarily committed to a public mental health facility. Subsection (c) defines as indigent a person who receives an annual income, after taxes, of 125 percent or less of the

federal poverty level is indigent. Subsection (d) defines indigent as a person who is unable to pay the cost of legal counsel for the proceeding before the court.

Under RCW 36.18.020(2)(h), which governs the $200 criminal filing fee, "an adult defendant in a criminal case shall be liable for a fee of two hundred dollars, except this fee shall not be imposed on a defendant who is indigent as defined in RCW 10.101.010(3)(a) through (c)." Stated differently, if a defendant is indigent only under RCW 10.101.010(3)(d), the $200 criminal filing fee is still mandatory under RCW 36.18.020(2)(h).

RCW 10.01.160(3) governs the payment of costs generally. It applies the same standard as RCW 36.18.020(2)(h), which prohibits trial courts from ordering defendants to "pay costs" if the defendant is indigent as defined in RCW 10.101.010(3)(a)-(c). If a defendant is not indigent as set forth in RCW 10.101.010(3)(a)-(c), trial courts are directed to "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." RCW 10.01.160(3).

Here, the trial court found Kalama to be indigent under RCW 10.101.010(3)(d). On appeal, Kalama appears to contest this, arguing that "[b]efore imposing LFOs, the [trial] court had just heard from cousnl [sic] that Ms. Kalama was unable to find work during the previous year, was homeless and staying at friends' houses, was unable to support herself, and had to rely on friends and family for financial support." Br. of Appellant at 9. Kalama goes on to argue that "the trial court did not comply with RCW 10.01.160(3)" and "the record indicates that Kalama was indigent under RCW 10.101.010(3) at the time of sentencing." Br. of Appellant at 9, 11. At no point does Kalama specifically state that her income is below 125 percent of the federal

4

poverty level. More importantly, at the hearings on this matter, the trial court heard no *evidence* showing that Kalama fell within RCW 10.101.010(3)(a)-(c).

In the section of her brief regarding the $200 criminal filing fee, Kalama also argues that the trial court was required to conduct an individualized inquiry into her present and future ability to pay LFOs. In support of her argument, Kalama cites *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). In *Blazina*, our Supreme Court held that RCW 10.01.160(3) requires trial courts to make individualized inquiries into a defendant's ability to pay prior to imposing discretionary LFOs. 182 Wn.2d at 837-38. The $200 criminal filing fee, however, is not discretionary. *See State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018) (holding that a trial court "impermissibly imposed discretionary LFOs of $2,100, as well as the $200 criminal filing fee"). Accordingly, the trial court here did not need to conduct a *Blazina* inquiry under RCW 10.01.160(3) before ordering Kalama to pay the $200 criminal filing fee.

As stated above, the trial court specifically determined that Kalama was indigent under RCW 10.101.010(3)(d), and not .010(3)(a)–(c). Because the $200 criminal filing fee is governed by RCW 36.18.020(2)(h), which clearly requires the imposition of the fee on all defendants who are not indigent as defined in RCW 10.01.010(3)(a)–(c), we affirm the trial court's imposition of the criminal filing fee.

## II. DISCRETIONARY LFO AND INTEREST ACCRUAL

Kalama argues that the trial court erred by imposing the community supervision fee, which is a discretionary LFO.[2] As stated above, prior to imposing discretionary LFOs, trial

---

[2] Community supervision fees are a discretionary LFO. RCW 9.94A.703(2)(d); *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018), *review denied*, 193 Wn.2d (2019).

No. 52964-5-II

courts must consider the defendant's financial resources and the burden the payment of costs will impose before determining the amount and method of payment. RCW 10.01.160(3); *Blazina*, 182 Wn.2d at 838. Here, however, the State notes that the trial court was clear in its intent to only impose mandatory costs, and concedes that the community supervision fee should be stricken. We accept the State's concession.

Kalama also argues, and the State concedes, that the interest accrual provision must be stricken. RCW 10.82.090(1) prohibits interest accrual on nonrestitution LFOs. We accept the State's concession.

We affirm the trial court's imposition of the $200 criminal filing fee, but remand to the trial court to strike the community supervision fee and the nonrestitution interest accrual provision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____, C.J.
Lee, C.J.

_____
Sutton, J.